CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

September 08, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SOLOMON JORDAN LEWIS, Plaintiff, | ) | Civil Action No. 7:24-cv-00608 |
| v. | ) | |
| DIRECTOR HAROLD W. CLARKE, *et al.*, Defendants. | ) | By: Elizabeth K. Dillon, Chief United States District Judge |

**MEMORANDUM OPINION**

Solomon Jordan Lewis, a Virginia inmate acting *pro se*, brought this action pursuant to 42 U.S.C. § 1983. Lewis alleges claims arising from an altercation with another inmate at Red Onion State Prison. (Am. Compl., Dkt. No. 16.) Lewis has sued several individuals, including the following defendants who have filed motions to dismiss: David Anderson, Harold W. Clarke, Chadwick S. Dotson, Edwards, Johnny Hall, Jones, Taylor, and Rick White (Dkt. No. 43) and Donnie Trent (Dkt No. 47). Also before the court is a motion by Lewis for default judgment against M.D. Addington, J.T. Wright, and Nurse C. Meade. (Dkt. No. 67.)

For the reasons stated below, the motions to dismiss will be granted, and plaintiff's motion for default judgment will be denied.

I. BACKGROUND

The following allegations are stated by Lewis in an amended complaint filed on May 2, 2025. (Dkt. No. 16.) Lewis identifies the following individuals as defendants in this action: Director Harold W. Clarke; Director Chadwick S. Dotson; Warden Rick White; Health Authority Donnie Trent; Major Johnny Hall; K-9 Officer John Doe #1;[1] Correctional Officer Milgrim;

[1] K-9 Officer John Doe #1 has been identified as Officer M.D. Addington.

Correctional Officer John Doe #2;[2] Nurse Jane Doe #1;[3] Nurse Jane Doe #2; Nurse Jane Doe #3; Lt. Jones; Correctional Officer Edwards; and Lt. Taylor. (*See* Am. Compl.)

Lewis alleges that he was involved in a physical altercation with an inmate at Red Onion State Prison on August 29, 2023. (Am Compl. at 10 of 46.) M.D. Addington was the first responder to a fight in progress. Addington gave his dog an attack command, and plaintiff was bitten multiple times before being given an opportunity to comply with commands to stop and get on the ground. (*Id.* at 10–11.)

After the fight, Lewis was taken to the medical department by correctional officers Milgrim and J.T. Wright. The officers held plaintiff's arms at "weird and odd angles" causing "acute pain in his finger and a surge of more acute pain shot through his left ring finger and amid the middle of his hand." (*Id.* at 11.)

At medical, Lewis was placed on a table to be seen by Nurse Meade. Milgrim and Addington continued to bend plaintiff's arms in a manner that forced him to be "slumped over at an angle so uncomfortable, plaintiff was unable to breath properly." (*Id.* at 11–12.) The officers were aware of plaintiff's breathing issues but did not stop the mistreatment. Lewis begged the medical staff to put him in a cell where he could "lie down and heal." (*Id.* at 12.) Lewis lost consciousness; when he woke up several correctional officers in the medical cell were removing his handcuffs and clothes. Lewis passed out again. When he woke up, he asked Milgrim if he could call the nurse due to the dog bites and injuries to his fingers. Lewis was removed from his cell and attended by Nurse Meade. (*Id.*)

[2] Correctional Officer John Doe #2 has been identified as Officer J.T. Wright.

[3] Nurse Jane Doe #1 has been identified as Nurse C. Meade.

The checkup by Nurse Meade addressed dog bites in plaintiff's right ring finger and lower back. Lewis's damaged finger, hand, and dog bite on his lower back were ignored. The nurse was made aware of Lewis's swollen left ring finger and additional dog bite. Nurse Meade advised that plaintiff be confined in a cell in the back of medical. (*Id.* at 13.) During this time, over the next several days, Lewis received no further medical care. Jane Doe #2 and Jane Doe #3 did medical rounds, and Lewis asked for medical aid, but his requests were ignored. (*Id.* at 13–15.)

Lewis was released from medical and placed in segregation at Red Onion. Lewis continued to "cry" for proper medical care. Only once or twice did nurses give him new bandages for his dog bite wounds. Lewis did not receive any care for his finger even after showing nurses that he could not move the finger and it had "completely lost feeling in it." (*Id.* at 15.)

Lewis alleges claims for excessive force in the initial response to his altercation with another inmate on August 29, 2023; continued excessive force and assault when being transported to the medical department on the same day; deliberate indifference to his serious medical needs in the aftermath of the fight; and retaliation for pursuing grievances related to the August 29, 2023 incident. (*Id.* at 22–32.)

## II. ANALYSIS

### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Iqbal*, 556 U.S. at 678. The court need neither accept a complaint's legal conclusions drawn from the facts, *id.* at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The court, however, accepts as true the complaint's well-pleaded factual allegations and construes these allegations, and the reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Pleadings by pro se litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. *See* 42 U.S.C. § 1983; *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 171 (2023). Furthermore, to establish liability under § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of his rights." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018).

### B. Motion to Dismiss by H. Clarke, C. Dotson, R. White, D. Anderson, J. Hall, Lt. Jones, Officer Edwards, and Lt. Taylor

#### 1. Claims against Clarke, Dotson, White, and Anderson

Lewis sues Clarke, Dotson, White, and Anderson in their personal and official capacities. Plaintiff alleges that Clark, in his former capacity as VDOC Director, was legally responsible for the operations of Red Onion State Prison and is "personally involved in all of the constitutional

deprivations claimed in [plaintiff's] complaint" because he "supervised the customs followed by each Defendant listed in [the] complaint." (Am. Compl. at 33.) He alleges that Director Dotson "has done nothing to restore the constitutional guarantee of . . . due process" and is "responsible for each and every individual listed in this complaint." (*Id.* at 34.) Lewis alleges that White was "legally responsible for his office and administrative operations" while acting as the warden at Red Onion and is "personally involved in all of the constitutional deprivations claimed in [plaintiff's] complaint" since he "supervised the customs followed by each Defendant listed . . . ." (*Id.* at 34–35.) Finally, plaintiff alleges that Warden Anderson "has done nothing to restore the constitutional guarantee of . . . due process . . . and while in office was responsible for each individual defendant listed in [the] complaint." (*Id.* at 35.)

Plaintiff has not stated the personal involvement of Clarke, Dotson, White, or Anderson in the allegations of constitutional violations in his amended complaint. "Liability under § 1983 is 'personal, based upon each defendant's own constitutional violations.' For this reason, a § 1983 claim requires factual detail about each defendant's personal involvement." *Burke v. Zook*, Civil Action No. 7:25-cv-00480, 2026 WL 1377316, at *2 (W.D. Va. May 15, 2026) (quoting *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) and citing *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017)). Lewis pays lip service to this requirement by using the phrase "personal involvement," but he is arguing for vicarious liability against these individuals for the actions of the other defendants listed in the amended complaint.

While vicarious liability is inapplicable to § 1983 suits, plaintiff may state a claim for supervisory liability, which is "not based on ordinary principles of respondeat superior, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on

those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001). To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that the subordinate's conduct posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor responded in a manner that was so inadequate as to demonstrate deliberate indifference to or tacit authorization of the subordinate's conduct, and (3) an affirmative causal link between the supervisor's inaction and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Need Bd.*, 31 F.4th 238, 257 (4th Cir. 2022). Under these elements, Lewis has failed to plausibly allege that any actions or inactions of Clarke, Dotson, White, or Anderson were causative factors in Lewis's injuries. Lewis does not allege any facts to suggest actual or constructive knowledge of an unreasonable risk to Lewis.

For these reasons, Lewis's claims against Clarke, Dotson, White, and Anderson will be dismissed.

**2. Claims against Hall, Jones, Edwards, and Taylor**

Hall, Jones, Edwards, and Taylor are alleged to be correctional officers at ROSP at the time of the events described in the amended complaint. The allegations do not describe any involvement by these defendants in the excessive force or deliberate indifference claims asserted by Lewis. Instead, Lewis attempts to state a claim for retaliation against these defendants.

Lewis alleges that on August 6, 2024, Hall instructed Jones and other correctional officers to search plaintiff's cell, and his legal mail was confiscated. (Am. Compl. 20, 30–31.) Edwards said that Jones took Lewis's legal mail and gave it to the Intel Department. (*Id.* at 21.) Also, Lt. Taylor was "part of the action." (*Id.*) Lewis spoke with Intel, who stated they never

received any of his legal work from Jones and did not know why the officers would "make a fib up." (*Id.*) Lewis alleges that these actions were in retaliation for his pursuit of grievances. According to Lewis, the officers ordered to "shakedown" his cell recovered "legal documents that weren't a threat to the security of ROSP." (*Id.* at 31.) Plaintiff alleges that defendants "actually took court records of this very own complaint." (*Id.* at 32.)

To state a First Amendment retaliation claim, a plaintiff "must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020). Filing a grievance constitutes protected conduct under the First Amendment. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017). "State prisoners have a constitutional right of meaningful access to the courts," and "the state may not punish a prisoner for having sought judicial remedies." *Al-Haqq v. Lucas*, Case No. 2:24-cv-03960-DCC-MGB, 2026 WL 717989, at *5 (D.S.C. Jan. 28, 2026) (citing *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978)).

To the extent that Lewis appears to allege that defendants retaliated against him for filing this lawsuit, the retaliation he alleges occurred on August 6, 2024, and this lawsuit was not filed in this court until September 4, 2024.[4] Lewis cannot plausibly contend that defendants retaliated against him on August 6, 2024, for a lawsuit that had yet to be filed. If Lewis means to allege retaliation for pursuing grievances, or for possessing legal mail, Lewis has not plausibly alleged that any protected conduct was "a substantial or motivating factor in a prison guard's decision to take adverse action." *Taylor v. Manis*, Civil Action No. 7:20-cv-00121, 2021 WL 519903, at *5 (W.D. Va. Feb. 11, 2021) (quoting *Martin*, 977 F.3d at 299). Moreover, Lewis has alleged that

[4] The court notes that the original complaint was signed by Lewis on August 12, 2024, and postmarked on August 29, 2024. (*See* Compl., Dkt. No. 1.)

he completed the grievance process (Am Compl. at 16–18), and he obviously was able to file this lawsuit, so he also cannot allege any adverse impact on his First Amendment rights.

The court will dismiss the claims against Hall, Jones, Edwards, and Taylor.

**C. Motion to Dismiss by Donnie Trent**

With respect to Trent, Lewis alleges that in pursuing a grievance in November of 2023, he "proceeded to the next step of exhausting his administrative remedies and received a response from Health Authority Donnie Trent, stating that he received an x-ray and everything was normal, which in turn basically meant there wasn't anything wrong with his health and plaintiff would be receiving further med/treatment." (Am. Compl. at 17–18.) Lewis alleges that he sent another facility request to Trent stating that he was "suffering from pain and paralysis, not a broken or fractured bone so there should've been more medical treatment than a mere x-ray." (*Id.* at 18.) Lewis alleges that Trent's actions were cruel and unusual punishment, denied him of due process, and violated the equal protection clause. (*See id.* at 29.)

Under the Eighth Amendment, only "deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment . . . ." *Jackson*, 775 F.3d at 178. To prove deliberate indifference, Lewis must show that the defendant prison official had "actual knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* This component requires proof of intent beyond mere negligence, errors in judgment, inadvertent oversights, or disagreements between doctor and patient about the prisoner's treatment plan. *Lindsey v. Slate*, Case No. 7:25CV00318, 2026 WL 1034414, at *2 (W.D. Va. Apr. 16, 2026) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).

Lewis's complaint about not receiving treatment beyond an x-ray reflects a disagreement about his treatment plan, which cannot satisfy the "very high standard" for a deliberate

indifference claim. *Ford v. Hooks*, 108 F.4th 224, 230 (4th Cir. 2024). Moreover, Lewis's allegations detail further treatment that he received in 2024, including a visit to an outside provider who told Lewis that he "suffered torn tendons and also had inflamed tissue in his left hand and ring finger." (Am. Compl. at 18.) Finally, Lewis does not allege that Trent was personally involved in Lewis's treatment, only that he was made aware of his treatment and the complaints Lewis had about the care he was receiving. For these reasons, Lewis fails to state a plausible Eighth Amendment claim against Trent.

Plaintiff's remaining claims also fail. Lewis's allegations about his medical treatment are properly analyzed under the Eighth Amendment, discussed above, not the due process clause of the Fourteenth Amendment. *See Alford v. Oyebade*, Civil Action No. 3:23CV798 (RCY), 2025 WL 1184104, at *3 n.3 (E.D. Va. Apr. 23, 2025) (rejecting alleged due process claim where the plaintiff "clearly indicates that Defendants' conduct exhibited 'deliberate indifference,' and the Eighth Amendment governs his claim"). Plaintiff's allegation that Trent's actions violated equal protection does not state a plausible claim because he does not allege that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

The court will grant Trent's motion to dismiss.

**D. Motion for Entry of Default**

Lewis has filed a motion for entry of default against defendants M.D. Addington, J.T. Wright, and Nurse C. Meade. (Dkt. No. 67.) At the time Lewis filed this motion, these defendants had not appeared in this action. They have now waived service and filed an answer on January 12, 2026. (Dkt. Nos. 71, 72.) Accordingly, the court will deny plaintiff's motion.

## III. CONCLUSION

The court will issue an appropriate order granting the motions to dismiss and denying plaintiff's motion for entry of default.

Entered: September 8, 2026.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
Chief United States District Judge